******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PALMER, J., concurring. I agree with and join the majority opinion because I am not persuaded that the mandatory minimum sentences imposed on the defendant, Taylor G., violated his eighth amendment right to an individualized sentencing decision that takes into account the youth and immaturity of a person who, like the defendant, commits a crime or crimes while under the age of eighteen. In fact, as the majority notes, there appears to be no case in which any court, state or federal, has held that the eighth amendment categorically bars the imposition of a mandatory minimum sentence on a juvenile. But cf. *State* v. *Lyle*, 854 N.W.2d 378, 386, 400 (Iowa 2014) (recognizing such prohibition under Iowa state constitution but acknowledging that "no other court in the nation has held that its constitution or the [f]ederal [c]onstitution prohibits a statutory schema that prescribes a mandatory minimum sentence for a juvenile offender"). Furthermore, in the present case, the defendant has not raised a claim under the Connecticut constitution.

I write separately, however, only to point out that, although the federal constitution does not *prevent* the legislature from subjecting juvenile offenders to certain kinds of mandatory minimum sentences, the legislature may wish to revisit the question of whether such mandatory prison terms are appropriate for juveniles, as a matter of sound public policy, in light of the marked differences between juveniles and adults. The United States Supreme Court recently reiterated these differences in *Miller* v. *Alabama*,      U.S.      , 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), explaining that, "[b]ecause juveniles have diminished culpability and greater prospects for reform [than adults] . . . they are less deserving of the most severe punishments." (Internal quotation marks omitted.) Id., 2464. As the court in *Miller* further explained, this conclusion is founded on "three significant gaps between juveniles and adults. First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. . . . Second, children are more vulnerable . . . to negative influences and outside pressures, including from their family and peers; they have limited contro[l] over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. . . . And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievabl[e] deprav[ity]." (Citations omitted; internal quotation marks omitted.) Id.

The court continued: "[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds—for example,

in parts of the brain involved in behavior control. . . . [T]hose findings—of transient rashness, proclivity for risk, and inability to assess consequences—both lessened a child's moral culpability and enhanced the prospect that, as the years go by and neurological development occurs, his deficiencies will be reformed." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 2464–65.

The court then "emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. Because [t]he heart of the retribution rationale relates to an offender's blameworthiness, the case for retribution is not as strong with a [child] as with an adult. . . . Nor can deterrence do the work in this context, because the same characteristics that render juveniles less culpable than adults—their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment." (Citations omitted; internal quotation marks omitted.) Id., 2465. Finally, the court observed that imposing the harshest of sentences on juvenile offenders because of their perceived dangerousness would be incompatible with the fact that "incorrigibility is inconsistent with youth"; (internal quotation marks omitted) id.; and, "for the same reason, rehabilitation could not justify [such a] sentence" because it would be "at odds with a child's capacity for change." Id.

As the experienced and highly regarded trial judge in the present case noted in his comments during the defendant's sentencing, mandatory minimum sentences for juvenile offenders pose a real risk of unduly limiting the ability of the court to impose a sanction that fairly accounts for the lack of maturity and diminished responsibility of such offenders. For that reason, our legislature may find it appropriate to reconsider the efficacy of subjecting juveniles to mandatory minimum sentences, even when, as in the present case, the federal constitution does not categorically prohibit them.